**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq.
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JASON KERZNOWSKI, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> OPKO HEALTH, INC., PHILLIP FROST, ADAM LOGAL, AND JUAN F. RODRIGUEZ, <br><br> Defendants. | Case No. <br><br> **CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Jason Kerznowski ("Plaintiff") individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Securities and

Exchange Commission ("SEC") filings by OPKO Health, Inc. ("OPKO" or the "Company"), as well as media and analyst reports about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons and entities, other than Defendants and their affiliates, who purchased publicly traded OPKO securities from September 26, 2013 through September 7, 2018, both dates inclusive ("Class Period"), seeking to recover compensable damages caused by Defendants' violations of federal securities laws and pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

4.     Venue is proper in this judicial district pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as the Company conducts business and has properties in this District.

5.     In connection with the acts, conduct and other wrongs alleged herein, Defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications, and the facilities of the national securities exchange.

## PARTIES

6.     Plaintiff, as set forth in the accompanying PSLRA Certification, acquired OPKO securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

7.     Defendant OPKO, a healthcare company, engages in the diagnostics and pharmaceuticals business in the United States and internationally – including in Ireland, Chile, Spain, Israel, and Mexico. The Company is a Delaware corporation with a main laboratory in Elmwood Park, New Jersey. OPKO securities trade on NASDAQ under the symbol "OPK."

8.     Defendant Phillip Frost ("Frost") has been the Company's Chief Executive Officer ("CEO") and Chairman since March 2007.

9.     Defendant Adam Logal ("Logal") served as the Company's Senior Vice President and Chief Financial Officer ("CFO") since April 2014. Defendant

Logal was the Vice President of Finance and Chief Accounting Officer of OPKO from July 2012 until April 2014.

10.     Defendant Juan F. Rodriguez ("Rodriguez") served as the Company's Senior Vice President and CFO from July 2012 to April 1, 2014.

11.     Defendants Frost, Logal, and Rodriguez are herein referred to as "Individual Defendants."

12.     Collectively, Defendant OPKO and Individual Defendants are herein referred to as "Defendants."

13.     Each of the Individual Defendants:

a.     directly participated in the management of the Company;

b.     was directly involved in the day-to-day operations of the Company at the highest levels;

c.     was privy to confidential proprietary information concerning the Company and its business and operations;

d.     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

e.     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

      f.      was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

      g.      approved or ratified these statements in violation of the federal securities laws.

14.    OPKO is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

15.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to OPKO under *respondeat superior* and agency principles.

## SUBSTANTIVE ALLEGATIONS
### Defendants' False and Misleading Class Period Statements

16.    On September 26, 2013, the article "Opko and Its Billionaire CEO Invested in Biozone" appeared on *Seeking Alpha*.  As part of a scheme to inflate the price of Biozone Pharmaceuticals ("Biozone") securities, the article touted Biozone by using OPKO and Defendant Frost's ownership in Biozone as Frost had a reputation as a successful biotech investor.

17.     On November 12, 2013, the Company filed a Form 10-Q for the quarter ended September 30, 2013 (the "3Q 2013 10-Q") with the SEC, which provided the Company's third quarter 2017 financial results and position. The 3Q 2013 10-Q was signed by Defendant Logal. The 3Q 2013 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Frost and Rodriguez attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

18.     On March 3, 2014, the Company filed a Form 10-K for the year ended December 31, 2013 (the "2013 10-K") with the SEC, which provided the Company's full year 2013 financial results and position. The 2013 10-K was signed by Defendants Frost, Rodriguez, and Logal. The 2013 10-K contained signed SOX certifications by Defendants Frost and Rodriguez attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

19.     On February 27, 2015, the Company filed a Form 10-K for the year ended December 31, 2014 (the "2014 10-K") with the SEC, which provided the Company's full year 2014 financial results and position. The 2014 10-K was signed by Defendants Frost and Logal. The 2014 10-K contained signed SOX certifications by Defendants Frost and Logal attesting to the accuracy of financial reporting, the

disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

20.     On April 8, 2015, the article entitled, "Opko Spots Another Overlooked Opportunity in MabVax Therapeutics" appeared on *Seeking Alpha*. Similar to the *Seeking Alpha* article on Biozone, this article used OPKO and Defendant Frost's reputations to improperly pump up the price of MabVax Therapeutics securities.

21.     On February 29, 2016, the Company filed a Form 10-K for the year ended December 31, 2015 (the "2015 10-K") with the SEC, which provided the Company's full year 2015 financial results and position. The 2015 10-K was signed by Defendants Frost and Logal. The 2015 10-K contained signed SOX certifications by Defendants Frost and Logal attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

22.     On March 1, 2017, the Company filed a Form 10-K for the year ended December 31, 2016 (the "2016 10-K") with the SEC, which provided the Company's full year 2016 financial results and position. The 2016 10-K was signed by Defendants Frost and Logal. The 2016 10-K contained signed SOX certifications by Defendants Frost and Logal attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

23.    On March 1, 2018, the Company filed a Form 10-K for the year ended December 31, 2017 (the "2017 10-K") with the SEC, which provided the Company's full year 2017 financial results and position. The 2017 10-K was signed by Defendants Frost and Logal. The 2017 10-K contained signed SOX certifications by Defendants Frost and Logal attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

24.    The statements referenced in ¶¶16-23 above were materially false and/or misleading because they misrepresented and/or failed to disclose the following adverse facts pertaining to the Company's business and operations which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Defendant Frost and OPKO were engaged in a pump-and-dump scheme with several other individuals and companies in their investments in several penny stocks; (2) this illicit scheme would result in governmental scrutiny including from the SEC; and (3) as a result, Defendants' statements about OPKO's business, operations and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## The Truth Emerges

25.   On September 7, 2018, the SEC issued a press release entitled "SEC Charges Microcap Fraudsters for Roles in Lucrative Market Manipulation Schemes" which included Frost and OPKO as defendants. The SEC made its complaint against Frost, OPKO, and others available at its website at https://www.sec.gov/news/press-release/2018-182. The press release states in relevant part:

> Washington D.C., Sept. 7, 2018 —The Securities and Exchange Commission today charged a group of 10 individuals and 10 associated entities for their participation in long-running fraudulent schemes that generated over $27 million from unlawful stock sales and caused significant harm to retail investors who were left holding virtually worthless stock.
>
> According to the SEC's complaint, from 2013 to 2018, a group of prolific South Florida-based microcap fraudsters led by Barry Honig manipulated the share price of the stock of three companies in classic pump-and-dump schemes. ***Miami biotech billionaire Phillip Frost allegedly participated in two of these three schemes***. Honig allegedly orchestrated the acquisition of large quantities of the issuer's stock at steep discounts, and after securing a substantial ownership interest in the companies, ***Honig and his associates engaged in illegal promotional activity and manipulative trading to artificially boost each issuer's stock price and to give the stock the appearance of active trading volume. According to the SEC's complaint, Honig and his associates then dumped their shares into the inflated market, reaping millions of dollars at the expense of unsuspecting investors.***
>
> "As alleged, Honig and his associates engaged in brazen market manipulation that advanced their financial interests while fleecing innocent investors and undermining the integrity of our securities markets," said Sanjay Wadhwa, Senior Associate Director in the SEC's Division of Enforcement. "They failed to appreciate, however, the SEC's resolve to relentlessly pursue and punish participants in microcap fraud schemes."

The SEC's complaint, which was filed in federal district court in Manhattan, charges Honig, John Stetson, Michael Brauser, John R. O'Rourke III, Mark Groussman, *Frost*, Elliot Maza, Robert Ladd, Brian Keller, John H. Ford, Alpha Capital Anstalt, ATG Capital LLC, GRQ Consultants Inc., HS Contrarian Investments LLC, Grander Holdings Inc., Melechdavid Inc., *OPKO Health Inc.,* Frost Gamma Investments Trust, Southern Biotech Inc., and Stetson Capital Investments Inc. with violating antifraud, beneficial ownership disclosure, and registration provisions of the federal securities laws and seeks monetary and equitable relief.

(Emphasis added).

26.    On this news, shares of OPKO fell $1.01 or over 18%, before NASDAQ halted the trading of OPKO on September 7, 2018 at 2:34 p.m. EDT at $4.58. To date, trading in OPKO remains halted, making the Company's stock illiquid and virtually worthless.

27.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

28.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the publicly traded securities of OPKO during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers

10

and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

29.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

30.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

31.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

32.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether Defendants' acts as alleged violated the federal securities laws;

(b)     whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

(c)     whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

(e)     whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

(f)     whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(g)     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

33.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

34.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

(a)     Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)     the omissions and misrepresentations were material;

(c)     the Company's securities are traded in efficient markets;

(d)     the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

(e)     the Company traded on the NASDAQ, and was covered by multiple analysts;

(f)     the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities;

13

Plaintiff and members of the Class purchased and/or sold the Company's securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts; and

(g)    Unexpected material news about the Company was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

35.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

36.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**Violation of Section 10(b) of The Exchange Act and Rule 10b-5
Against All Defendants**

37.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

38.    This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

39.    During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

40.    The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

41.    The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such

statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

42.    Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

43.    As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity

of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

44.    Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

45.    As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

46.    By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of the Company's securities during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

47.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

48.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

49.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

50.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were

"controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

51.     Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

52.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: September 12, 2018                    Respectfully submitted,

                                                   **THE ROSEN LAW FIRM, P.A.**

                                                   By: /s/Laurence M. Rosen
                                                   Laurence M. Rosen
                                                   609 W. South Orange Avenue, Suite 2P
                                                   South Orange, NJ 07079
                                                   Tel: (973) 313-1887
                                                   Fax: (973) 833-0399
                                                   Email: lrosen@rosenlegal.com

                                                   Counsel for Plaintiff